**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-150-CRS-CHL**

**DEXTER M. LEE,**

                                                    **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**                       **Defendant.**

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND RECOMMENDATION**

Before the Court is the complaint of plaintiff Dexter M. Lee ("Lee") filed March 10, 2016. (DN 1.) In his complaint, Lee seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g) (2012) ("Any individual, after any final decision of the Commissioner of Social Security . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . ."). This case was referred to the undersigned Magistrate Judge for submission of findings of fact, conclusions of law, and recommendation. (*See* DN 14.)

On July 27, 2017, Lee filed a Fact and Law Summary (DN 15). On October 27, 2016, the Commissioner filed a Fact and Law Summary (DN 20). Thus, this matter is ripe for review. For the reasons set forth below, the undersigned Magistrate Judge recommends that the final decision of the Commissioner be affirmed.

**I.**       **FINDINGS OF FACT**

Lee filed an application for supplemental social security income and disability insurance benefits on December 16, 2014. (R. 221, 227.) Lee alleged that he become disabled on July 17, 2014. (*Id*. at 24.) Administrative Law Judge ("ALJ") Steven Collins held a hearing on October

1

15, 2015 in Louisville, Kentucky. (*Id*. at 43.) Lee was present and represented by counsel Shannon Fauver. (*Id*.) Cherise Powell, a vocational expert, also testified at the hearing. (*Id*.) In a decision dated December 1, 2015, the ALJ concluded that Lee was not disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act, Pub. L. No. 74-271, 49 Stat. 620 (codified as amended at 42 U.S.C. ch. 7). (*Id*. at 35-36.) In reaching that conclusion, the ALJ engaged in the five-step evaluation process promulgated by the Commissioner to determine whether an individual is disabled and made the following findings:

1. Lee meets the insured requirements of the Social Security Act through June 30, 2019. (*Id*. at 25.)

2. Lee has not engaged in substantial gainful activity since July 17, 2014, the alleged onset date. (*Id*.)

3. Lee has the following severe impairments: degenerative disc disease of the lumbar spine; sciatica; and history of bladder cancer. (*Id*. at 25-26.)

4. Lee does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 28.)

5. After careful consideration of the entire record, the undersigned finds that Lee has the residual functioning capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except that he is limited to frequently balancing, to occasionally climbing ramps and stairs, stooping (*i.e*., bending at the waist), kneeling, crouching (*i.e*., bending at the knees), and crawling but never climbing ladders, ropes or scaffolds. He needs a sit/stand option every 30 minutes to change positions from sitting to standing and vice versa. Lee should avoid concentrated exposure to extreme cold and humidity, and he should avoid even moderate exposure to vibration. Further, he should avoid all exposure to hazards such as unprotected heights and dangerous moving machinery due to necessary use of an assistive device (e.g., walker or cane). (*Id*. at 29.)

6. Lee is unable to perform any past relevant work. (*Id*. at 34.)

7. Lee was born on April 18, 1966 and was 48 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date. (*Id*.)

8. Lee has a limited education and is able to communicate in English. (*Id*.)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Lee is "not disabled," whether or not he has transferable job skills. (*Id*.)

10. Considering Lee's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (*Id*. at 35.)

11. Lee has not been under a disability, as defined in the Social Security Act, from July 17, 2014, through the date of this decision. (*Id*.)

Lee timely requested an appeal to the Appeals Counsel, seeking review of the ALJ's decision. On January 15, 2016, the Appeals Council denied Lee's request for review. (*Id*. at 1.) At that point, the Commissioner's decision became final. 20 C.F.R. §§ 404.981, 422.210(a); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Lee timely filed this action on March 10, 2016, seeking review of the ALJ's decision. (DN 1.)

## II. CONCLUSIONS OF LAW

The Social Security Act authorizes payment of disability insurance benefits and supplemental social security income to persons with disabilities. Social Security Act, Disability Insurance Benefits, 42 U.S.C. §§ 401-34 (2012); Social Security Act, Supplemental Social Security Income, 42 U.S.C. §§ 1381-85 (2012). To be entitled to disability insurance benefits, a plaintiff must establish that he became disabled prior to the expiration of his insured status. 42 U.S.C. § 423(a), (c); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). An individual shall be considered disabled if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).

3

### A. Standard of Review

In conducting its review, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Sec'y of Health and Human Servs.*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson,* 471 F.2d 1265 (6th Cir. 1972)). Rather, the Court's review is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence" and that the correct legal standards were applied. 42 U.S.C. § 405(g); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 937 (6th Cir. 2011). If the answer is "yes," then the Court may not even inquire as to whether the record could support a decision the other way. *Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989).

"Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sec'y of Health and Human Servs.*, 2 F.3d 692, 695 (6th Cir. 1993) (quoting *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)) (internal quotation marks omitted). Therefore, "[a] reviewing court will affirm the Commissioner□s decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart*, 710 F.3d at 374.

### B. Five-Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

> (1) Is the claimant engaged in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the

answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to perform basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1 to Subpart P of Part 404 of this chapter? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

4) Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

5) Even if the claimant cannot perform past relevant work, does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

*Id*.

The claimant bears the burden of proof with respect to the first four steps. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422-23 (6th Cir. 2008). The burden shifts to the Commissioner at the fifth step to prove that there are available jobs in the national economy that the claimant is capable of performing. *Id*. at 423. The claimant, however, always retains the burden of proving lack of RFC. *Herr v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C. Lee's Contentions

Lee contests Findings 3, 5, 9, 10, and 11. The Court will address each contention below.

1.      Finding 3

At Finding 3, the ALJ found that Lee had several severe impairments, including degenerative disc disease of the lumbar spine. Lee asserts that the ALJ should have included his "status post lumbar fusion and laminectomy, foraminotomy/facetectomy at two levels with instrumentation and graft . . . ." (DN 15 at 2.) Lee acknowledges that the ALJ described this condition in Finding 4. Additionally, in Finding 5, the ALJ acknowledged Lee's lumbar spine surgery, stating that he "underwent a posterior decompression and instrumented lumbar fusion at levels L3-L5 with instrumentation at May 28, 2015 . . . ." and took it into account in formulating the RFC. (R. 31.)

"According to the regulations, upon determining that a claimant has onesevere impairment, the Secretary *must* continue with the remaining steps in his disability evaluation as outlined above." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (emphasis added). This is because the purpose of "the second stage severity inquiry . . . serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985).

Here, the ALJ found several severe impairments; therefore, he was *required* to continue with the sequential disability evaluation. And, the ALJ considered Lee's lumbar spine surgery and his status afterward in formulating the RFC. The ALJ noted that Lee had "failed non-operative options" and underwent a "posterior decompression and instrumented lumbar fusion [] at levels L3-L5 with instrumentation on May 28, 2015 . . . ." (R. 31.) The ALJ also noted that Lee developed a post-operative infection at the incision site, but that it had been resolved with treatment. (*Id*. at 32.) The ALJ, citing a record from treating orthopedic surgeon, Dr. Charles

Crawford, noted that radiographs of the lumbar spine performed on September 14, 2015 showed that it was "stable appearing reconstruction." (*Id.*)

Consequently, any failure on the part of the ALJ to list Lee's status post lumbar fusion as a severe impairment does not constitute reversible error. *See Maziarz*, 837 F.2d at 244 ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 634 (6th Cir. 2016) (unpublished opinion) ("Kepke avers that the ALJ reversibly erred by failing to also list her thyroid disease as a severe impairment in the second step of the sequential disability evaluation process. Kepke's argument is invalid. The ALJ found that Kepke has several other severe impairments. Therefore, Kepke cleared step two of the sequential analysis, requiring the ALJ to consider all of Kepke's impairments (severe and non-severe) in the remaining steps."); *Carney v. Comm'r of Soc. Sec.*, No. 3:12-CV-00744, 2015 WL 5089783, at *4 (M.D. Tenn. Aug. 17, 2015) ("[A]n ALJ's failure to list an impairment as severe at step two is not reversible error if the ALJ considers the impairment at subsequent steps in the sequential evaluation process.").

### 2.     Finding 5

At Finding 5, the ALJ determined Lee's RFC. The RFC finding is the ALJ's ultimate determination of what a claimant can still do in a work setting despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946. The RFC finding is based on a consideration of medical source statements and all other evidence, medical and

non-medical, in the record. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946. Thus, in making the RFC finding, the ALJ must (1) assign weight to the medical source statements in the record; and also (2) consider the descriptions and observations of the claimant's limitations as a result of the impairments from the claimant and the claimant's family and friends. 20 C.F.R. § 404.1545(a)(3), 416.945(a)(3). Lee's arguments are directed at (2), and in particular, the ALJ's credibility determination regarding Lee's description of his pain and functional limitations.

While the ALJ must consider all of a claimant's statements about his symptoms, including pain, a claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings that show the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416,929(a); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) ("First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms."). Then, "if the ALJ finds that such animpairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Rogers*, 486 F.3d at 247 (citing 20 C.F.R. § 416.929(a)). Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and

any other factors bearing on the limitations of the claimant to perform basic functions. *Id*. (citing 20 C.F.R. § 416.929).

In making this assessment, the ALJ must necessarily consider the subjective allegations of the claimant and make credibility findings. Social Security Ruling 96-7p, 1996 WL 374186, at *2-*3 (S.S.A. July 2, 1996). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247. Therefore, the Court is limited to evaluating whether the ALJ's explanations for partially discrediting Lee's allegations were reasonable and supported by substantial evidence in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("[W]e are limited to evaluating whether or not the ALJ's explanations for partially discrediting Ms. Jones are reasonable and supported by substantial evidence in the record."). Moreover, "[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Here, the ALJ determined that Lee's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Lee's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. (R. 30.) The ALJ noted that the objective evidence did not fully support Lee's allegations that his impairments would prevent him from performing *any* substantial gainful activity. For example, the ALJ noted that Lee testified that he had debilitating back and lower extremity pain at a level 6-7 out of 10 with pain medication; that he lies down for five out of eight hours due to pain; that with pain medication, he is able to stand with a cane from twelve to fifteen minutes before he has

to sit down due to increasing pain and weakness of legs; and that he is unable to do anything except go to scheduled doctor's appointments. (*Id*. at 31.) The ALJ concluded that, despite Lee's testimony, "office treatment records . . . d[id] not mention anywhere near the severity and frequency of alleged pain and functional limitations from back and lower extremity pain, as stated in his testimony, which adversely affects his credibility." (*Id*.)

The crux of Lee's argument is that the ALJ's conclusion – "that office treatment records . . . do not mention anywhere near the severity and frequency of alleged pain and functional limitations from back and lower extremity pain, as stated in his testimony, which adversely affects his credibility" – is not supported by substantial evidence. (*Id*. at 31.) Lee points to specific examples to support his position.

### a. April 23, 2015 note of Dr. James Charasika

First, Lee takes issue with the ALJ's reliance on the April 23, 2015 note of Dr. James Charasika, Lee's primary care provider, to demonstrate that pain medications help alleviate Lee's back pain. (DN 15 at 3.) The ALJ stated that the April 23, 2015 note indicated that Lee has moderate back pain and that his current pain medication helped some with the pain. (*Id*. at 31, 486.) The ALJ also stated that Lee's continual re-filling of his pain medications further supported that they were relatively effective at controlling his pain. (*Id*.) To the extent that Lee argues that the April 23, 2015 note does not support the ALJ's conclusion that Lee's pain medications help with his pain because it was written before Lee's surgery, his argument fails. Lee testified at the hearing on October 15, 2015 that his pain level is a 6/7 out of ten when medicated and when un-medicated it is a ten. (R. 74.) Consequently, there is substantial

evidence to support the ALJ's conclusion that pain medications alleviate some of Lee's pain based on Lee's own testimony.

Lee also argues that the April 23, 2015 note also stated that Lee was scheduled for surgery in May, that the pain was worse when walking, and that Lee believed that his blood pressure was up due to the pain of walking – things that were not included in the ALJ's written decision. However, the ALJ did not ignore the fact that Lee underwent a lumbar fusion – in fact, he noted and considered it in his opinion. (*See* R. 31 [noting posterior decompression and instrumented lumbar fusion on May 28, 2015].) Moreover, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Dykes ex rel. Brymer v. Comm'r of Soc. Sec.*, 112 F. App'x 463, 467 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). As discussed, the ALJ considered the April 23, 2015 note from Dr. Charasika in the decision and the RFC included restrictions that took into account Lee's pain and limited mobility.

### b. Failure of conservative treatment

Second, Lee appears to argue that, because conservative treatment failed and he ultimately had lumbar fusion surgery, his complaints of pain were credible. (DN 15 at 6.) Again, the ALJ never concluded that Lee's complaints of pain were *not* credible. Instead, the ALJ concluded that Lee's pain symptoms did not render him totally disabled. And the ALJ did take into account significant limitations in formulating the RFC, including a sit/stand option, limited climbing, stooping, kneeling, crouching and also noted the necessary use of an assistive device, such as a cane or walker. (R. 29.)

### c. Lee's post-surgery recovery

Third, Lee argues that the ALJ failed to take into account Lee's post-surgery recovery. (DN 15 at 4-5.) Lee underwent a lumbar fusion on May 28, 2015. (R. 668.) Following that surgery, he developed a post-operative infection and underwent irrigation, debridement, and drainage of the lumbar spine wound on July 1 and July 3, 2015. (*Id.* at 664-67.) Records indicated that Lee required home nursing care for a few weeks following the debridement and due to the infection. (*Id.* at 569-70.) On September 14, 2015, notes from treating surgeon, Dr. Crawford, indicated that Lee had taken two months of Levaquin and that the infection had been resolved. (*Id.* at 660.)

Lee states that the surgical notes for the two debridement procedures resulting from the infection and the home nursing care notes showed that Lee was homebound with significant pain and limited ability to move following the surgery. Specifically, Lee states that the home nursing care notes (from July 9, 2015) showed that skilled nursing care was needed; that pain was reported to be a 10/10 after medication; that Lee required the use of a two-handed device for locomotion; that he required human supervision or assistance to negotiate stairs, steps, or uneven surfaces; that he needed bed to chair transfer help; that he required assistance with transfer to the toilet; that he required the presence of another person while showering and for dressing and grooming; and that he was homebound because he was unable to negotiate outside stairs and his ambulation was unsteady and unsafe even with assistance. (DN 15 at 4-5 [citing R. 612, 627-28].) Lee also notes that there were references to balance and gait problems, weak peripheral pulses, and continued 10/10 pain in the home nursing care notes on July 14 and July 21, 2015. (DN 15 at 5 [citing R. 641, 652, 653, 657].)

12

Lee argues that the ALJ did not resolve the conflict between the "post-surgery treatment" in the record as noted above, including evidence of Lee being homebound and unable to walk without assistance, and the ALJ's RFC conclusion; Lee also argues that the ALJ failed to take into consideration the seriousness of the infection. (DN 15 at 4-5.) This is incorrect. The ALJ acknowledged that Lee developed a post-operative infection at the incision site of his lumbar surgery, which required two debridement procedures in July 2015. (R. 32.) However, the ALJ concluded that treatment records showed that the infection *was resolved with treatment*. (*Id.*) In particular, the ALJ stated, "While [Lee] previously developed a postoperative infection at the incision site, which required two irrigation and debridement procedures in July of 2015, findings on physical examination on September 14, 2015 show that the 'skin on the back is healthy with no signs of infection.'" (*Id.* [quoting, in part, September 14, 2015 treatment note].)

Lee does not dispute that his infection was resolved by September 2015. Therefore, it makes sense that the ALJ would not expressly reference medical records from July 2015 – when Lee was still in the midst of battling the post-operative infection – when formulating the RFC because the infection had been resolved by then. Furthermore, the July 2015 nursing care notes cited by Lee are inconsistent with his testimony at the October 15, 2015. As noted by the ALJ, Lee testified that he lived in a second floor apartment and had to navigate steps to get to it, that he drove independently, including to doctors' appointments and taking his father to the grocery store and pharmacy, and was able to take care of his personal hygiene and to cook. (R. 32, 56-58, 72, 79.) In other words, there was substantial evidence for the ALJ to conclude that the infection (serious or not) had been resolved by September 14, 2015 and to not expressly rely on the July 2015 home nursing care records cited by Lee in determining the RFC.

#### d. Reported activities of daily living

Fourth, Lee appears to take issue with the ALJ's conclusion that Lee's reported activities of daily living were inconsistent with the severity of alleged pain and functional limitations. (DN 15 at 7.) Relying on Lee's testimony and information reported in the psychological consultative examination, function report, and third party function report, the ALJ concluded that Lee was independent in performing activities of daily living, able to take care of his personal hygiene, to cook, and perform household chores, "which are all limited at times secondary to alleged pain in back and lower extremities." (R. 32.) In addition, the ALJ noted that Lee testified that he lives in a second floor apartment and has to navigate steps to get to it, and that he drives independently, including to doctors' appointments and driving his father to the grocery store and pharmacy. (*Id*. at 32-33.)

Lee argues that the ALJ did not state why he rejected the qualifications provided by Lee as to *how* he performs the tasks of taking his father to the grocery store or the *number* of times he goes up and down from the second floor; for example, Lee testified that, while he takes his father to the grocery store, his father uses a motorized cart and Lee does not walk with him; Lee also testified that he has trouble going up and down the steps to his apartment. (DN 15 at 8.) While the ALJ did not specifically note these aspects of Lee's testimony, he acknowledged and accounted for the fact that Lee's activities of daily living are limited at times due to pain. Moreover, Lee does not deny that he does have to navigate steps to get to and from his second floor apartment or that he drives his father to the grocery store. Therefore, Lee's arguments in this regard fall flat.

Lee also asserts that notes from the treating surgeon, visiting nurses, and treating pain management doctor are consistent with and support his testimony, but the ALJ failed to take them into account in concluding that Lee's activities of daily living were inconsistent with the severity of his alleged pain and functional limitations. (DN 15 at 8.) The Court has already addressed Lee's argument with respect to the home nursing care notes in July 2015. And, with respect to the notes from the treating surgeon and treating pain management doctor, Lee cites to no specific treatment records that indicate functional limitations. Rather, Lee points to those records generally and to indicate that they give credibility to the fact that he experiences pain. But, as the Court has stated, the ALJ did not entirely discount Lee's description of his limitations due to pain. Indeed, the ALJ actually noted that Lee's activities of daily living are limited at times secondary to pain, but that they nonetheless suggest a level of functioning within the RFC and are inconsistent with total disability. (R. 32-33.)

### e. Narcotic prescription medication and consistent work history

Fifth, Lee argues that the ALJ failed to discuss the implication of narcotic prescription medications taken before and after the back surgery; Lee also argues that the ALJ failed to note Lee's consistent work history between 1989 and 2014 in assessing his credibility. (DN 15 at 9.)

With respect to the prescription narcotic pain medication, Lee does not cite to any medical record indicating the effects of these medications on him; indeed, Lee makes no mention of any particular side effects from medication in his brief. *See United States v. Layne*, 192 F.3d 556, 567 (6th Cir. 1999) (finding that issues adverted to in a "perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 996-96 (6th Cir. 1997)) (internal quotation marks omitted).

15

Furthermore, the ALJ noted that Lee was prescribed medications and that they helped alleviate some of his pain. (R. 30.) Therefore, it is clear that the ALJ considered the effect of prescription narcotic pain medications.

With respect to his consistent work history, it is unclear what Lee is arguing or how his consistent work history bolsters his credibility with respect to his current alleged pain and functional limitations. The ALJ noted, however, that Lee's past work history indicated that he had never been fired or laid off from a job because of problems getting along with other people. (R. 32.); *Fiori v. Comm'r of Soc. Sec. Admin.*, No. 5:14-CV-1159, 2015 WL 5522104, at *9 (N.D. Ohio Sept. 16, 2015) ("Plaintiff makes no objections to the ALJ's credibility analysis beyond her assertion that he improperly failed to consider Plaintiff's 'strong work history'" in his analysis. This assertion is incorrect, as the ALJ points out in his credibility analysis that the 'record indicates that the claimant had lengthy employment in skilled positions.'") (internal citation omitted). Consequently, it is clear that the ALJ considered Lee's past work history. *Cf. Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir. 2016) (unpublished opinion) ("The ALJ was not required to explicitly discuss Dutkiewicz's work history when assessing his credibility . . . .").

### f. Record indicating exaggerated pain response

Finally, Lee takes issue with the ALJ's statement that "there is evidence in the record of [Lee] exaggerating his pain." (R. 32; DN 15 at 6.) To support this statement, the ALJ cited treatment records from February 3, 2015 and March 10, 2015. Those records stated, "The patient exhibits exaggerated pain response with long pauses between sitting and standing or any change in position. He had to stop several times during the short walk between examination

room and procedure room." (R. 417, 437.)[1]  Lee argues that the ALJ interpreted the word "exaggerated" to mean that Lee was intentionally overstating his pain or malingering. Lee asserts that the term has limited appearance in the record and was chronologically before the lumbar fusion surgery; thus, Lee avers that a conclusion that he was overstating or malingering was not supported by substantial evidence.

The ALJ did not conclude that Lee was malingering. But, the undersigned agrees that the term "exaggerated" may have been taken out of context, that is, it could have meant purposely overstating *or* it could have indicated movements that were more pronounced due to pain. Nonetheless, to the extent that the ALJ's interpretation of the records was erroneous, it was harmless. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) ("We now make explicit what we have previously adopted by implication: harmless error analysis applies to credibility determinations in the social security disability context."). These records did not serve as the sole basis for the ALJ not fully crediting Lee's testimony regarding his limitations due to pain. Moreover, as noted above, even putting the February 3, 2015 and March 10, 2015 records aside, there is substantial evidence to support the ALJ's decision to not fully credit Lee's description of his limitations as a result of pain. *Id.* (affirming denial of benefits because, even putting the factual error aside, the ALJ's decision carefully parsed all medical records and that the records supported a finding of no disability).

In sum, "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Comm'r of Soc. Sec.*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Sec'y of Health and*

---

[1] The dates of these particular medical records are confusing and it is possible the quoted portion is an excerpt from only one record, not two.

*Human Servs.*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389–90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). This is because there is a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton*, 246 F.3d at 773 (quoting, in part, *Mullen,* 800 F.2d at 545). Therefore, the question to answer is not whether substantial evidence contradicts the ALJ's findings; rather, it is whether those findings are supported by substantial evidence. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("While [it may be true that substantial evidence contradicts the Secretary's findings], it is also true that substantial evidence supports the Secretary's finding.").

Here, the ALJ took into account Lee's lumbar fusion surgery and allegations of pain. Treatment records from September 14, 2015 indicated that the infection was resolved and that the lumbar spine was "stable appearing reconstruction." (R. 32.) The ALJ did not discount wholesale Lee's statements regarding his alleged pain and functional limitations; rather, he only deemed them partially credible due, in part, the Lee's own testimony regarding his daily activities. And, the ALJ took into consideration work-related limitations resulting from his impairments, noting that he required the use of an assistive device, among other limitations. Moreover, Lee has not pointed to any functional limitations mandated by any of his treating sources. Therefore, the undersigned concludes that there is substantial evidence to support the ALJ's credibility determination in this instance.

### 3. Findings 9, 10 and 11

Lee objects to Findings 9, 10, and 11 because the validity of these findings is based on the erroneous credibility determination in Finding 5; Lee incorporates his arguments with respect to Finding 5. (R. 15 at 10.) Because the undersigned has concluded that there was substantial evidence to support the ALJ's credibility determination in Finding 5, the Court will not address Findings 9, 10, and 11.

### III. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that judgment for the Commissioner be AFFIRMED.

cc: Counsel of record

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, any party may serve and file specific written objections to these findings and recommendations. *Id.*; Fed. R. Civ. P. 72(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections. Fed. R. Civ. P. 72(b)(2).