UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

DEXTER M. LEE                                                                                    PLAINTIFF

v.                                                                                    NO. 3:16-CV-150-CRS

NANCY A. BERRYHILL,
Acting Commissioner of Social Security                                               DEFENDANT

## MEMORANDUM OPINION

This matter is before the court for consideration of the Findings of Fact, Conclusions of Law, and Recommendation of the United States Magistrate Judge in this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the denial by the Commissioner of Social Security ("Commissioner") of plaintiff Dexter M. Lee's claim for disability insurance benefits ("DIB") and for supplemental security income ("SSI"). The magistrate judge conducted a review of the findings set forth in the final decision of the Commissioner, concluding that substantial evidence supported the findings and recommended that the decision be affirmed. Lee has filed objections to the magistrate judge's report which we address below.

By way of background, Lee was 48 years old when he allegedly became disabled on July 17, 2014. Lee filed for DIB and SSI in December 2014. Lee's initial claims for benefits were denied and were denied on reconsideration. Lee requested and was given a hearing before the administrative law judge ("ALJ") on October 15, 2015 at which time Lee appeared, represented by counsel, and gave testimony. Testimony was also taken from an impartial vocational expert who participated via telephone. On December 1, 2015, the ALJ issued a written opinion evaluating the evidence under the required 5-step process and concluding that

> Based on the application for a period of disability and disability insurance benefits protectively filed on December 5, 2014, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on December 5, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

DN 13-2, p. 36.

We need not recount the ALJ's entire analysis here, as it is described in detail in the magistrate judge's report. Instead, we focus on the two particular issues raised by Lee in objection to the magistrate judge's decision and recommendation to affirm the ALJ's decision. Lee first challenges the magistrate judge's conclusion that there was no reversible error by failing to include "Lee's status post lumbar fusion" as a severe impairment in Finding 3.

The magistrate judge found no error in the ALJ's failure to include Lee's "status post lumbar fusion and laminectomy, foraminotomy/facetectomy at two levels with instrumentation and graft" in his Finding 3 of severe impairments. The magistrate judge's reasoning was two-fold. First, the ALJ acknowledged and described the condition in Finding 4. Second, he took the condition into account in formulating Lee's Residual Functional Capacity ("RFC") in Finding 5.

Further, the magistrate judge found that the failure to include Lee's post-surgery status in Finding 3 was not reversible error inasmuch as Finding 3, in essence, merely performs a gatekeeping function to screen out groundless claims. The magistrate judge correctly explained that the finding that a claimant has a severe impairment prompts the inquiry to continue with the remaining steps of the disability evaluation. Here, the ALJ correctly continued the 5-step process. Groundless claims are eliminated where no severe impairment is identified and the evaluation terminates at that step. Here, the ALJ found severe impairments and continued with the remaining steps in the evaluation process. Thus there was no reversible error in Finding 3.

Lee's "objection" is that "the nature of the omitted impairment…brings into focus the necessity for a statement of the case and discussion of the evidence in understandable language giving the reason(s) for the decision." DN 22, pp. 2-3. While Lee's meaning is not entirely clear, his objection to the omission of Lee's impairment from Finding 3 does not suggest that the omission constituted error, much less reversible error. That is, he does not argue that *all* severe impairments *had to be* included in an itemization in Finding 3. Rather Lee continues, in the remainder of the paragraph, to delve into his other objection that the ALJ improperly discounted Lee's self-reports of pain.

As noted by the magistrate judge, the ALJ found that Lee's medically determinable impairments could be expected to cause the alleged symptoms, but that Lee's statements concerning the intensity persistence and limiting effects of these symptoms were not entirely credible. DN 21, p. 9.

> The ALJ carefully evaluated the medical records and determined that
>
> despite the claimant's testimony of debilitating pain and functional limitations, the undersigned notes that office treatment records from the claimant's treating spine surgeon (Exhibits 19F, 17F and 2F), pain management physician (Exhibit 9F) and primary care providers (Exhibits 8F and 3F) do not mention anywhere near the severity and frequency of alleged pain and functional limitations from back and lower extremity pain, as stated in his testimony, which adversely affects his credibility.

DN 13-2, pp. 30-31.

More specifically, the ALJ noted the factors set forth in 20 CFR 404.1529(c) and 416.929(c) which must be considered in addition to the objective medical evidence when assessing the credibility of the claimant's statements, and then made the necessary assessment. *See* DN 21, p. 8.

First, we note that the ALJ stated:

> [T]he claimant testified that he was fired from his job in July of 2014 (alleged onset date) because he took too long on breaks. He did not testify as to any specific work-related limitations from his impairments in July 2014, which caused him to take longer breaks. Thus, this would indicate that if the claimant had not been fired in July 2014, he would have continued working at this job, despite allegations of severe pain and limitations from lumbar degenerative disc disease and sciatica.

DN 13-2, p. 34.

The ALJ noted that in November, 2014, Lee was transported from his primary care provider's office to the emergency room where he presented with sciatica with complaints of pain radiating down his leg and unable to walk. DN 13-2, p. 31 (citing Ex. 3F, p. 14). Lee followed up with his primary care provider on November 26, 2014. An MRI of the lumbar spine showed "disc bulging, facet arthropathy and moderate bilateral foraminal stenosis with mild impingement at exiting L3 and L4 nerve roots." On examination, Lee's "gait was normal, but he had decreased range of motion of the lumbar spine with pain, stiffness, and muscle spasticity noted throughout the lumbar spine." He was prescribed medications and physical therapy. DN 13-2, p. 31 (citing Ex.3F, p. 12-13). He was diagnosed with lumbar degenerative disc disease and was referred to an orthopedic spine surgeon. *Id.*

The ALJ noted that in December 2014, Lee's primary care provider prescribed a cane for balance. The ALJ also noted that, in a December 15, 2014 office record, Dr. Charles Crawford, an orthopedic spine surgeon, stated that "claimant reports pain in low back and left leg since October of 2014. The pain is worse with activity and improved by rest. There is associated numbness and tingling. There is subjective weakness. Prior treatments have included rest and medications but no physical therapy, injections, or surgery. " DN 13-2, p. 31. After examining Lee, Dr. Crawford recommended physical therapy and steroid injections. *Id.* The office notes indicated "[f]indings on physical examination were within normal limits except for limited range

of motion in lumbar spine due to pain and stiffness.  Bilateral lower extremity range of motion is within normal limits with no increased pain.  There was no obvious hip, knee, or ankle pathology bilaterally.  Bilateral lower extremity muscle tone and strength were normal.  Bilateral lower extremity sensation to light touch is intact.  Bilateral lower extremity reflexes are normal and symmetric." *Id.*

The ALJ indicated that there was evidence in treatment records from February 3, 2015 and March 10, 2015 of "the claimant exaggerating his pain."  He cites Ex. 6F, pp. 4 and 2 which he quotes as stating that "The patient exhibits exaggerated pain response with long pauses between sitting and standing or any change in position."  DN 13-2, p. 33. An April 23, 2015 office note by Lee's primary care provider Dr. James Charasika, notes that Lee has "moderate back pain" and that "his current medication helps some with back pain."  DN 13-2, p. 32 (citing Ex. 8F, p. 8).

While finding that there was some pain improvement with lumbar steroid injections, on April 17, 2015 Dr. Crawford noted that Lee had "failed non-operative options" and recommended lumbar spine surgery.  DN 13-2, p. 32. Lee had surgery on May 28, 2015, then suffered a serious postoperative wound infection which twice required irrigation and debridement in July 2015 and a two-month course of Levaquin.  By September, 2015 the infection was resolved, the wound healed, and the lumbar spine was "stable appearing reconstruction."  DN 13-2, pp. 32, 33.  The ALJ noted that findings on physical examinations and medical imaging revealed no more than moderate limitations, citing office records of Dr. Crawford from September 14, 2015 which indicated "normal lower extremity range of motion" and "limited range of motion in lumbar spine due to pain and stiffness." DN 13-2, p. 33.

Lee reiterates in his objections to the magistrate judge's report that the fact that Lee had lumbar surgery in May somehow validates all of his complaints of pain. The magistrate judge correctly stated in this regard that the ALJ never found that Lee's complaints of pain were not credible, but rather found that the pain symptoms did not render him totally disabled. The magistrate judge stated that

> While the ALJ must consider all of the claimant's statements about his symptoms, including pain, a claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings that show the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a)…Then, "if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Rogers [v. Comm'r of Soc.Sec.],* 486 F.3d [234, 247 (6th Cir. 2007)].

DN 21, p. 8.

With respect to Lee's objection that the ALJ did not find a twelve month period of disability, the ALJ recited, and the magistrate judge reiterated, that there was no mention by Lee of any limiting factors or pain in July 2014 when he was fired from his job. He stated that he was fired for taking too long on his breaks. In December, 2014, Lee reported to Dr. Crawford that he had been having pain in his low back and left leg since October 2014.

Lee also objects that the ALJ did not include details about disabling pain and the home nursing care required as a result of the post-operative infection. The magistrate judge correctly stated that the nursing care notes from July 2015, for the post-operative infection which had been resolved by September 2015, had no bearing on Lee's RFC at the time of the hearing in October 2015.

Lee urges, however, that with an alleged onset date of July 17, 2014 and the debilitating post-operative infection in July of 2015 which required a two-month course of antibiotics to clear, Lee had been under a period of disability lasting for over a 12-month period. The problem, however, is that there was no complaint by Lee of disabling pain in July 2014 which rendered him unable to work, nor was there corroborating medical evidence of disabling pain at that time. The ALJ noted that the office treatment records from Lee's treating spine surgeon, pain management physician, and primary care providers "do not mention anywhere near the severity and frequency of alleged pain and functional limitations from back and lower extremity pain, as is stated in his testimony." DN 13-2, p. 9. There is no evidence that Lee was unable to work as of July 17, 2014. The earliest documented date that Lee claims to have experienced pain in the low back and leg was October 2014, the date of onset he relayed to Dr. Crawford in December 2014. Again, as expressly stated by the magistrate judge, the ALJ never found that Lee's complaints of pain were untrue, but rather the persistence, intensity, and limiting effects were not entirely credible and were not supported by objective medical evidence.

With respect to Lee's statements as to debilitating pain in October of 2015, The ALJ stated:

> While the claimant has impairments that could be expected to produce some discomfort and functional limitations, the objective evidence does not fully support his allegations that his impairments would prevent him from performing any substantial gainful activity. For example, the claimant testified that he had debilitating back and lower extremity pain at level 6-7/10 with pain medication. He testified that he lies down on either the couch or the bed for five hours out of eight hours during the day due to pain. The claimant testified that with pain medication, he is able to stand with a cane from 12-15 minutes before he has to sit down due to increasing pain and weakness of legs. He testified that he was unable to do anything except go to scheduled doctor appointments.

DN 13-2, p. 32. The ALJ noted that the September 14, 2015 office treatment record indicated that Dr. Crawford's findings on physical examination and medical imaging revealed no more

than moderate limitations. The ALJ explained that the record indicated an exaggerated pain response prior to surgery which impacted his credibility, and noted that Lee's reported activities of daily living were inconsistent with the severity of alleged pain and functional limitations he reported. The magistrate judge correctly determined that the ALJ's decision was supported by substantial evidence, even if some evidence could conceivably support an alternate conclusion. The ALJ was clearly within the "zone of choice" in his analysis which cannot be disturbed by this court. *Buxton v. Comm'r of Social Sec.*, 246 F.3d 762, 773 (6th Cir. 2001).

As noted by the magistrate judge, "the ALJ took into consideration work-related limitations resulting from his impairments, noting that he required the use of an assistive device, among other limitations. Moreover, Lee has not pointed to any functional limitations mandated by any of his treating sources." DN 21, p. 18.

For these reasons set forth herein, this court concludes that magistrate judge's report was correct in finding that the ALJ's decision is supported by substantial evidence. Lee's objections to the magistrate judge's report are without merit and will be denied. The magistrate judge's report will be accepted and adopted in its entirety. A separate order and judgement will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**

November 29, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**